**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JACLYN RUGGIERO, LORRAINE RUGGIERO and JOSEPH RUGGIERO<br>*Plaintiffs,*<br>v.<br>MORAVIAN COLLEGE,<br>*Defendant.* | CIVIL ACTION NO: ________<br>**COMPLAINT**<br>**(Jury Trial Demanded)** |

## COMPLAINT

Plaintiffs Jaclyn Ruggiero ("Jaclyn" or "Ms. Ruggiero"), Lorraine Ruggiero ("Lorraine Ruggiero" or "Mrs. Ruggiero"), and Joseph Ruggiero ("Joseph Ruggiero" or "Mr. Ruggiero") bring this civil action under Federal law and the laws of the Commonwealth of Pennsylvania, seeking compensatory damages against Defendant Moravian College ("Moravian" or "The College") for offenses arising from, *inter alia*, Defendant's (a) breaches of contract; (b) negligent misrepresentations; (c) violations of Section 504 of the Rehabilitation Act; (d) violations of Title III of the Americans with Disabilities Act; (e) violations of 22 Pa. Code Chapter 15

## JURISDICTION AND VENUE

1. This court has subject matter jurisdiction over the Section 504 and Title III claims in this case pursuant to 28 U.S.C. § 1331, as those claims arise under the laws of the United States. *See* 29 U.S.C. § 701, et seq. and 20 U.S.C. § 1681, *et seq.*

2. This Court also has jurisdiction over the claims in this case arising under Pennsylvania law pursuant to 28 U.S.C. § 1332(a)(1). Ms. Jaclyn Ruggiero is a citizen of New Jersey,

Defendant is an entity based in Pennsylvania, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

3. This Court has supplemental jurisdiction over the Pennsylvania law claims in this case pursuant to 28 U.S.C. § 1367 because those claims are so related to the claims that are within this Court's original jurisdiction that they form part of the same case or controversy.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the Defendant resides in this District and a substantial part of the events or omissions giving rise to the claims set forth herein occurred within the jurisdiction of this Court.

**PARTIES**

5. Plaintiff Jaclyn Ruggiero ("Jaclyn") is a New Jersey resident diagnosed with Attention Deficient Hyperactivity Disorder ("ADHD"). She resides at 7 Devonshire Road, Cedar Grove, New Jersey, 07009.

6. Plaintiff Lorraine Ruggiero is a New Jersey resident and mother to Jaclyn Ruggiero, residing at 7 Devonshire Road, Cedar Grove, New Jersey, 07009.

7. Plaintiff Joseph Ruggiero is a New Jersey resident and father to Jaclyn Ruggiero, residing at 7 Devonshire Road, Cedar Grove, New Jersey, 07009.

8. Defendant Moravian College ("Moravian" or "the College") is a private college with its main campus and principal place of business located at 1200 Main St, Bethlehem, PA 18018.

9. At all times material hereto, Defendant acted by and through its agents, servants, employees, and/or representatives who were acting in the course and scope of their

respective agency or employment and/or in the promotion of Defendant' business, mission and/or affairs.

## FACTUAL BACKGROUND

10. Jaclyn Ruggiero was a student at Moravian from August 2014 until May 2016.

11. Prior to attending Moravian, Jaclyn was diagnosed with Attention Deficit Hyperactivity Disorder.

12. Jaclyn was the third child from her family to attend Moravian College. Before and upon Jaclyn's matriculation at Moravian, Jaclyn and her parents, Joseph and Lorraine Ruggiero, attended many Moravian Open Houses, Accepted Students Day, Top Recruits Day, and other orientations over a period of more than 10 years.

13. At each such event, the Ruggieros were repeatedly assured by Moravian's faculty panel, as well as the Office of Academic and Disability Support, that Moravian had the programs and services necessary to support students with disabilities.

14. Moravian faculty repeatedly represented that they had excellent academic support services available to students with disabilities, including "several layers of networks" to ensure that these students would succeed.

15. Moravian urged parents to trust them and "back off and not be helicopter parents" once the students were at Moravian because Moravian was well equipped to support students with learning disabilities. Ms. Roth and the Office of Academic and Disability Support represented specifically that they "had this" and would step in if they saw students struggling. The College represented that one of the biggest advantages to being a small school was their increased ability to monitor the students' progress. It repeatedly

represented that it would help each student to succeed by never allowing a student to fall through the cracks.

16. Moravian and its agents specifically assured the Ruggieros that the College would work with Jaclyn to provide the accommodations she needed to succeed.

17. Relying on these representations, the Ruggieros first sought to notify the College of Jaclyn's disability and need for accommodations before classes began.

Ms. Ruggiero's Disclosure of her Disabilities

18. On June 24, 2014, Lorraine Ruggiero emailed Laurie Roth, Director of Academic and Disability Support. Mrs. Ruggiero informed Ms. Roth that Jaclyn was a student with a disability. She told Ms. Roth that Jaclyn would need accommodations.

19. In response, Ms. Roth advised Mrs. Ruggiero that Jaclyn would need to submit a "Disclose a Disability" form and other documents to Elaine Mara, Assistant Director of Academic Support.

20. Ms. Roth further advised the Ruggieros that after receiving these documents, Ms. Mara would contact Jaclyn to meet, and would write accommodation letters for Jaclyn to submit to her professors. Ms. Roth copied Ms. Mara on this email.

21. These representations were also mirrored by Moravian's "Disability Disclosure Process", available to students and parents through Moravian's website.

22. Jaclyn completed the required form that day and, on June 25, 2014, Mrs. Ruggiero sent the Disability Disclosure form, a Summary of Performance report, Jaclyn's most recent IEP, Jaclyn's Psychoeducational Report, a full IQ battery, Jaclyn's Achievement Test, Jaclyn's ADHD diagnosis, and a request for all accommodations available to her,

including a note-taking accommodation, to the email address for Ms. Mara that Ms. Roth had provided.

23. Two weeks went by with no response from Moravian.

24. When Mrs. Ruggiero sent another email to verify receipt of the records, she received an error message.

25. Mrs. Ruggiero contacted Ms. Roth by email to notify her of the issue. In reply, Ms. Roth apologized for the error, and again copied Ms. Mara to ensure that Ms. Mara was able to see the documents and request for accommodations.

26. Jaclyn began her Freshman year having provided Moravian with all of the materials required to begin the interactive process. But Ms. Mara never contacted her to meet, agree on accommodations, or create accommodation letters for Jaclyn's professors. Because of this lack of communication, Moravian did not provide Jaclyn with any accommodations in her first semester.

27. Jaclyn finished the semester with a grade point average of 1.08 and was placed on academic probation for the upcoming semester.

28. After struggling through her first college semester without accommodations, Jaclyn emailed Ms. Mara again to again request accommodations for the upcoming spring semester. Ms. Mara responded only to tell Jaclyn she would first need to submit paperwork disclosing her disability, which Jaclyn had already submitted twice. Jaclyn submitted it again.

29. Jaclyn was finally given accommodations in her second semester. Her academic performance improved -- but she was starting in a deep GPA hole, and under significant stress to make up ground.

Failure to Monitor Mental Health

30. Jaclyn's mental health began to deteriorate due to the pressure of raising her grade point average and facing dismissal. She frequently communicated her struggles to staff at Moravian and on one specific occasion, Jaclyn had an anxiety attack during a meeting with Camille Murphy, her academic advisor. Staff at Moravian never contacted Jaclyn's parents about her struggles despite having Jaclyn's permission to do so and the College's representations that they would do so.

31. On January 29, 2015, Jaclyn was hospitalized for panic attacks. The Ruggieros were first informed of the extent of Jaclyn's stress when they were notified by the Moravian Health Center that Jaclyn was being brought by ambulance to the hospital. The Ruggieros were not informed sooner, despite Moravian's repeated assurances throughout the admissions process that the faculty would monitor and provide services to students suffering from anxiety or depression.

32. Moravian failed to contact Jaclyn or her parents to follow-up on her condition, or to offer her support in any way despite being taken by ambulance from the College.

33. Jaclyn finished the semester with a 2.5 grade point average for the semester.

Failure to Engage in Interactive Process

34. Jaclyn decided to attend summer school in the summer of 2015 to improve her grades. At the end of the summer term, Jaclyn had earned a 3.0 grade point average. Her cumulative grade point average rose to a 2.03.

35. Jaclyn continued to work diligently to raise her grade point average, including seeking additional accommodations. In August 2015, before the start of the Fall 2015 semester,

she visited the Office of Academic and Disability Support with her roommate to re-initiate the interactive process.

36. Jaclyn advised Ms. Mara she wanted to set up accommodations for the new semester. Ms. Mara refused to do so. She instead advised Jaclyn to return after the start of the new semester.

37. Jaclyn began the semester without revised accommodations, and found herself overwhelmed. She attempted to contact Ms. Mara on various occasions, but received no response.

38. Part of the reason why she received no response is that Ms. Mara had left Moravian, but Moravian failed to notify Jaclyn about this change.

39. In fact, no one from the Office of Academic and Disability Support contacted Jaclyn during the Fall 2015 semester to begin the requested interactive process. She finished that semester with a 0.91 grade point average, lowering her cumulative average to 1.71.

First Dismissal

40. In January 2016, Jaclyn again contacted the Office of Disability and Academic Support to request accommodations for the upcoming semester.

41. Rather than engaging with her, and just days before students were to return for the Spring 2016 semester, Moravian sent Jaclyn a letter via email formally discontinuing Jaclyn as a student because her cumulative grade point average had fallen below a 2.0.

42. In response to this letter, Lorraine Ruggiero called Moravian.

43. During her phone call with the office of Carol Traupman-Carr, the Dean of Academic Affairs at Moravian College, Mrs. Ruggiero learned that letters to discontinued students were meant to be sent out in December at the close of the semester. This had not

happened because "several people" in the office were "out sick," and the employees did not work once winter break started.

44. Because of this untimely notification, Jaclyn was unable to explore other options for schooling for the upcoming semester. Her only two options were to appeal the decision or forego at least one semester of school.

45. Jaclyn appealed her dismissal to Dean Carol Traupman-Carr. She reaffirmed her commitment to her studies at Moravian.

46. Dean Carr informed Jaclyn that raising her grade point average would likely be "too big a hill to climb," and that her graphic design major might not be the best fit for her. Moravian accepted no responsibility for Jaclyn's situation despite having failed to provide support services as requested.

47. Dean Carr agreed to reinstate Jaclyn on academic probation for the Spring 2016 term.

48. As part of Jaclyn's reinstatement, Dean Carr sent a list of terms that Jaclyn must meet in the spring semester. These terms included reaching a cumulative grade point average of 2.0. Moravian still did not initiate the requested interactive process to adjust Jaclyn's accommodations.

49. Upon her return to Moravian in January 2016, Jaclyn felt that the school had become a hostile environment, as Moravian had imposed additional academic requirements upon her while stating that they did not believe she was capable of succeeding.

50. Jaclyn nonetheless tried to meet the requirements imposed on her to the best of her ability by attending tutoring sessions, academic support and meeting with her advisor.

51. After struggling for another semester, Jaclyn earned a grade point average of 0.91. This brought her cumulative average to 1.53.

Second Dismissal

52. In May 2016, Dean Carr again sent a letter, via email to Jaclyn and via regular mail to her parents, discontinuing Jaclyn as a student at Moravian because her GPA was below 2.0.

53. The May letter explained that Jaclyn may apply for reconsideration. It did not offer her the chance to attend summer programs to bring up her GPA. And, to further indicate that its decision was final, Moravian shut down Jaclyn's Moravian ID, access to Moravian computer programs, and access to Moravian student websites.

54. Jaclyn felt intimidated, rejected and misunderstood – especially by the sentiments Dean Carr expressed without regard for the effects of Moravian's repeated refusals, both tacit and express, to accommodate Jaclyn's disabilities or to even support her in achieving the challenges they had set for her.

55. Although it was Jaclyn's dream to graduate from Moravian College, she felt it had become a hostile environment and it was futile to apply for reconsideration. She matriculated at a different college for the Fall 2016 term.

Misrepresentations Concerning Computer Ownership

56. Six months went by. Then, on November 22, 2016, when Jaclyn was in the middle of class at her new college and preparing for final exams, Moravian remotely disabled Jaclyn's computer equipment, which she had acquired while at Moravian.

57. The Ruggieros received an invoice for the computer equipment three days after the equipment was shut off (the day after Thanksgiving) and immediately tried to contact Moravian.

58. Since it was the week of Thanksgiving break, however, the administrative offices at Moravian were closed.

59. The Ruggieros were unable to contact anyone until the following week, and Jaclyn was unable to work on a large project that required a special program she had independently paid for and installed on her computer.

60. When Mrs. Ruggiero contacted Moravian following Thanksgiving break, the Bursar's office informed her that Jaclyn had failed to return or pay for the computer equipment.

61. Before this incident, however, Moravian had made no effort to contact Jaclyn about the computer equipment. She was never sent a bill. The Ruggieros had never been sent a bill prior to the equipment being disabled.

62. She was never warned that her computer would be disabled if she did not pay a bill. In fact, the Ruggieros were under the impression that Jaclyn *had* paid for the computer through the technology fees she had paid with her tuition.

63. Moravian advised Mrs. Ruggiero that the computer equipment had not yet been paid for in full. The College explained that full payment was spread out over four years, and provided a copy of a contract that Jaclyn had signed on May 20, 2014, while a senior in high school.

64. Despite repeated requests to reactivate the computer equipment while the payment issue was resolved, Moravian refused to reactivate the computer equipment, causing Jaclyn additional distress and hardship.

65. The Ruggieros immediately paid the balance due on the equipment in December 2016. Moravian reactivated the computer equipment only after the invoice was paid.

66. Whereas the January 2016 discontinuance letter advised Jaclyn that she needed to return the computer equipment or it would be considered a theft, the May discontinuance letter did not request the return of the equipment.

67. Moravian never requested the return of the equipment or payment for the equipment prior to disabling it.

68. While communicating with Moravian to attempt to resolve the equipment issue, the Ruggieros received an email from Dean Traupman-Carr containing the previous dismissal letters sent to Jaclyn. The email included a letter that was purportedly sent to Jaclyn and her parents in August of 2016 ("The August 2016 letter").

69. Neither Jaclyn nor her parents had ever seen the August 2016 letter prior to this email. In fact, Mr. and Mrs. Ruggiero had been removed from the "carbon copy" list on the August letter, despite having been copied on the January and May dismissal letters.

70. The August 2016 letter stated that Jaclyn had been sent a discontinuance notice in May 2016. This was true, and the Ruggieros had received a copy of that letter.

71. The August 2016 letter also stated that Jaclyn was given the option to apply for reconsideration. This was also true.

72. The August 2016 letter further stated that the May discontinuance letter gave Jaclyn the option to attend summer school to improve her grade point average, and that because Jaclyn did not apply for reconsideration and did not attend summer school, her dismissal would be effectuated.

73. In fact, the May discontinuance letter did not include an option to attend summer school. Jaclyn would have certainly utilized the option of summer school as she had the previous year.

74. Although Jaclyn is now attending a different college, her experience at Moravian has been scarring. She incurred more than $80,000 of student loan debt to attend Moravian, her dream school and her siblings' alma mater. The stress and strain of struggling not

only without proper accommodations, but to even get Moravian to work with her on accommodations, caused her such significant stress that she was hospitalized.

75. Furthermore, as a result of Moravian's multiple failures to communicate, Jaclyn's college career has been needlessly prolonged. Jaclyn was unable to transfer any credits to her new college that were unique to (and required by) Moravian, or in which she had received below a C+. She has thus been deprived of the significant amount of time, work, and money that she put into those courses. She has suffered the loss of her confidence and emotional well-being.

76. In supporting Jaclyn as she attended school, Mr. and Mrs. Ruggiero have spent more than $10,000, including the cost of summer school tuition, books, equipment and fees. They are both included as co-signors on Jaclyn's student loans, and are secondarily responsible for Jaclyn's loan payments. Due to Moravian's dismissal of Jaclyn, Mrs. and Mrs. Ruggiero have lost the value of their investment in Jaclyn's education.

## CLAIMS FOR RELIEF

### COUNT I: BREACH OF CONTRACT BETWEEN JACLYN RUGGIERO AND MORAVIAN COLLEGE – DISCLOSURE OF DISABILITY PROCESS

77. Plaintiffs hereby incorporate each and every allegation in the preceding paragraphs of this Complaint as if set forth in full herein.

78. At all relevant times, Jaclyn and Defendant were operating under a contract.

79. The contract between Moravian and Jaclyn consisted of, *inter alia,* the written guidelines, policies and procedures as contained in the written materials distributed to Jaclyn over the course of her enrollment at Moravian, as well as the brochures, email correspondence between the Ruggieros and Moravian officials, and other official statements, policies and publications of the institution.

80. Jaclyn paid valuable consideration in the form of more than $80,000 in tuition, expenses and fees to attend Moravian and receive services as a student with a disability.

81. Moravian breached its contract with Jaclyn by failing to follow the procedures it put in place to ensure that students with disabilities received accommodations.

82. Moravian breached the covenant of good faith and fair dealing, implied in all contracts formed in Pennsylvania, by failing to follow the procedures it put in place to ensure that students with disabilities received accommodations.

**WHEREFORE,** based on the foregoing facts and claims, Plaintiffs respectfully request Judgment in their favor and against Defendant and prays the Court grant, as appropriate, compensatory damages in an amount in excess of $75,000 to be determined at time of trial, costs and attorneys' fees, and any and all other relief deemed just and equitable by this Court.

**COUNT II - BREACH OF CONTRACT BETWEEN LORRAINE RUGGIERO AND MORAVIAN COLLEGE – DISCLOSURE OF DISABILITY PROCESS**

83. Plaintiffs hereby incorporate each and every allegation in the preceding paragraphs of this Complaint as if set forth in full herein.

84. At all relevant times, Jaclyn and Defendant were operating under a contract.

85. The contract between Moravian and Jaclyn consisted of, *inter alia,* the written guidelines, policies and procedures as contained in the written materials distributed to Jaclyn over the course of her enrollment at Moravian, as well as the brochures, email correspondence between the Ruggieros and Moravian officials, and other official statements, policies and publications of the institution.

86. Mrs. Lorraine Ruggiero tendered direct payment to Moravian College for Jaclyn's summer tuition, summer room and board, books, and fees associated with Jaclyn's graphic design major, totaling at least $10,000 in payment to Moravian pursuant to the contract between Jaclyn and Moravian.

87. Mrs. Lorraine Ruggiero was included as a co-signor on Jaclyn's student loans, and is secondarily responsible for Jaclyn's loan payments.

88. Moravian breached its contract with Jaclyn by failing to follow the procedures it put in place to ensure that students with disabilities received accommodations.

89. Moravian breached the covenant of good faith and fair dealing, implied in all contracts formed in Pennsylvania, by failing to follow the procedures it put in place to ensure that students with disabilities received accommodations.

**WHEREFORE,** based on the foregoing facts and claims, Plaintiffs respectfully request Judgment in her favor and against Defendant and prays the Court grant, as appropriate,

compensatory damages in an amount in excess of $75,000 to be determined at time of trial, costs and attorneys' fees, and any and all other relief deemed just and equitable by this Court.

**COUNT III - BREACH OF CONTRACT BETWEEN JOSEPH RUGGIERO AND MORAVIAN COLLEGE – DISCLOSURE OF DISABILITY PROCESS**

90. Plaintiffs hereby incorporate each and every allegation in the preceding paragraphs of this Complaint as if set forth in full herein.

91. At all relevant times, Jaclyn and Defendant were operating under a contract.

92. The contract between Moravian and Jaclyn consisted of, *inter alia,* the written guidelines, policies and procedures as contained in the written materials distributed to Jaclyn over the course of her enrollment at Moravian, as well as the brochures, email correspondence between the Ruggieros and Moravian officials, and other official statements, policies and publications of the institution.

93. Mr. Joseph Ruggiero tendered direct payment to Moravian College for Jaclyn's summer tuition, summer room and board, books, and fees associated with Jaclyn's graphic design major, totaling at least $10,000 in payment to Moravian pursuant to the contract between Jaclyn and Moravian.

94. Mr. Joseph Ruggiero was included as a co-signor on Jaclyn's student loans, and is secondarily responsible for Jaclyn's loan payments.

95. Moravian breached its contract with Jaclyn by failing to follow the procedures it put in place to ensure that students with disabilities received accommodations.

96. Moravian breached the covenant of good faith and fair dealing, implied in all contracts formed in Pennsylvania, by failing to follow the procedures it put in place to ensure that students with disabilities received accommodations.

**WHEREFORE,** based on the foregoing facts and claims, Plaintiffs respectfully request Judgment in her favor and against Defendant and prays the Court grant, as appropriate, compensatory damages in an amount in excess of $75,000 to be determined at time of trial, costs and attorneys' fees, and any and all other relief deemed just and equitable by this Court.

**COUNT IV – NEGLIGENT MISREPRESENTATIONS**

97. Plaintiffs hereby incorporate each and every allegation in the preceding paragraphs of this Complaint as if set forth in full herein.

98. Under Pennsylvania law, the elements of negligent misrepresentation are: (1) a misrepresentation of a material fact; (2) made under circumstances in which the speaker ought to have known its falsity; (3) with an intent to induce another to act on it; and; (4) which results in injury to a party acting in justifiable reliance on the misrepresentation. *See Bortz v. Noon,* 729 A.2d 555, 561 (Pa. 1999); *Gilmour v. Bohmueller,* 2005 U.S. Dist. LEXIS 1611, *9 (E.D. Pa. Jan. 27, 2005).

99. Moravian represented to Jaclyn, *inter alia,* that her needs would be fully accommodated if she self-identified, provided documents, and sought an accommodation.

100. The representations Moravian made about its ability to accommodate Jaclyn's needs were materially false.

101. Moravian made those representations with the intent to induce Jaclyn to attend Moravian.

102. On information and belief, Moravian and its agents knew or should have known that it was utilizing an email server that was defective.

103. On information and belief, Moravian and its agents knew or should have known that students working with Ms. Mara would need to be specifically notified that she had left the College.

104. On information and belief, Moravian and its agents knew or should have known that it had dismissed Jaclyn from the College without offering Jaclyn the opportunity to take summer school courses.

105. Jaclyn justifiably relied on Moravian's misrepresentation concerning its ability to engage in the interactive process, initially and throughout Jaclyn's education.

**WHEREFORE,** based on the foregoing facts and claims, Plaintiffs respectfully request Judgment in their favor and against Defendant and prays the Court grant, as appropriate, compensatory damages in an amount in excess of $75,000 to be determined at time of trial, costs and attorneys' fees, and any and all other relief deemed just and equitable by this Court.

**COUNT V – 504 OF THE REHABILITIATION ACT OF 1973 – FAILURE TO ENGAGE IN INTERACTIVE PROCESS AND FAILURE PROVIDE REASONABLE ACCOMMODATIONS**

106. Plaintiffs hereby incorporate each and every allegation in the preceding paragraphs of this Complaint as if set forth in full herein.

107. Moravian is subject to Section 504 because it is a recipient of federal funding.

108. Jaclyn is an individual who suffers from ADHD, a mental impairment that substantially limits several major life activities, including but not limited to organization of daily tasks, focus and attention.

109. At all relevant times, Jaclyn was a qualified handicapped person with respect to education services because she was able to attend school and participate in educational programs.

110. Plaintiffs assert that Moravian discriminated against her on the basis of her disability by denying her an equal opportunity to participate in academic services and activities.

111. Section 504's mandate to provide equal opportunity participation in non-academic and extracurricular services and activities is part of its broader prohibition against discrimination, which provides that "[n]o qualified handicapped person shall, on the basis of a handicap, be excluded from participation in, be denied the benefits of, or otherwise be subjected to discrimination under any program or activity which receives federal financial assistance." 34 C.F.R. § 104.4.

112. Plaintiffs assert that from August 2014 until May 2016, the College discriminated against Jaclyn in violation of Section 504 by failing to engage in the interactive process initially after Jaclyn had identified herself as a student with a disability, failing to engage in the interactive process throughout Jaclyn's education by failing to communicate the terms of her dismissal, and failing to provide Jaclyn with a reasonable accommodation by dismissing her without the opportunity for taking summer school classes.

113. As a direct result of Moravian's discrimination against Jaclyn, she suffered severe emotional distress. She experienced anxiety attacks while in the presence of Moravian staff, and was hospitalized for panic attacks. She was ultimately dismissed from the College without being given the chance to go to summer school, and suffered a loss in tuition and in the benefit of her education.

**WHEREFORE,** based on the foregoing facts and claims, Plaintiffs respectfully request Judgment in their favor and against Defendant and prays the Court grant, as appropriate, compensatory damages in an amount in excess of $75,000 to be determined at time of trial, costs and attorneys' fees, and any and all other relief deemed just and equitable by this Court.

**COUNT VI – TITLE III OF THE AMERICANS WITH DISABILITIES ACT -- FAILURE TO ENGAGE IN INTERACTIVE PROCESS AND FAILURE PROVIDE REASONABLE ACCOMMODATIONS**

114. Plaintiffs hereby incorporate each and every allegation in the preceding paragraphs of this Complaint as if set forth in full herein.

115. At all relevant times, Jaclyn has suffered and continues to suffer from ADHD.

116. As a result, Jaclyn is, and at all relevant times was, a person with a disability entitled to protections of the Americans with Disabilities Act ("ADA").

117. At all relevant times, Moravian was and is subject to the requirements of the ADA with respect to Ms. Ruggiero.

118. Moravian is subject to Title III of the ADA because it is a "private entity that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or postsecondary education, professional, or trade purposes." *See* 28 C.F.R. § 36.309(a).

119. Moravian is also a "place of public accommodation" under the ADA because it is an "undergraduate, or postgraduate private school, or other place of education." 42 U.S.C. 12181(7)(J).

120. Plaintiffs assert that from August 2014 until May 2016, the College discriminated against Jaclyn in violation of the Americans with Disabilities Act by failing to engage in the interactive process initially after Jaclyn had identified herself as a student with a disability, failing to engage in the interactive process throughout Jaclyn's education by failing to communicate the terms of her dismissal, and failing to provide Jaclyn with a reasonable accommodation by dismissing her without the opportunity for taking summer school classes.

**WHEREFORE,** based on the foregoing facts and claims, Plaintiffs respectfully request Judgment in their favor and against Defendant and prays the Court grant, as appropriate, compensatory damages in an amount in excess of $75,000 to be determined at time of trial, costs and attorneys' fees, and any and all other relief deemed just and equitable by this Court.

Dated: 23 March 2018

Respectfully Submitted,

Michael D. Raffaele (PA ID 91615)
Frankel & Kershenbaum
1230 County Line Road
Bryn Mawr, PA 19010
T: (610) 922-4200
F: (610) 646-0888
Michael@MyKidsLawyer.com
*Counsel for Jaclyn, Lorraine, and Joseph Ruggiero*